Case No. 20-5113

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

STEPHEN PARMENTER,
Plaintiff/Appellant,

v.

CITY OF NOWATA, OKLAHOMA.,
Defendant/Appellee.

---

Appeal from the United States District Court
For the Northern District of Oklahoma
The Honorable Terence C. Kern
District Court Case No. 4:19-CV-431-TCK-JFJ

---

ANSWER BRIEF OF APPELLEE CITY OF NOWATA, OKLAHOMA

---

Respectfully submitted,

Thomas A. Le Blanc, OBA #14768
tleblanc@bestsharp.com
Matthew B. Free, OBA #18055
mfree@bestsharp.com
BEST & SHARP
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, OK 74103
Telephone: (918) 582-1234
Facsimile: (918) 585-9447
*Attorney for Appellee City of Nowata, Oklahoma*

ORAL ARGUMENT NOT REQUESTED
*(COPIES OF THIS BRIEF HAVE BEEN SUBMITTED ELECTRONICALLY.)*

January 5, 2022

## **TABLE OF CONTENTS**

I.      JURISDICTIONAL STATEMENT ...........................................................1

II.     STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................1

III.    STATEMENT OF CASE ........................................................................2

IV.     SUMMARY OF THE RECORD ..............................................................2

        A.      Factual Background................................................................2

        B.      Parmenter's Procedural Due Process Claim .......................11

        C.      District Court Opinion and Order........................................12

V.      SUMMARY OF ARGUMENT..................................................................13

VI.     ARGUMENTS AND AUTHORITIES .....................................................14

        A.      THE DISTRICT COURT PROPERLY DETERMINED THAT
                PARMENTER LACKED A PROPERTY INTEREST IN
                FUTURE EMPLOYMENT INSOFAR AS THE CITY
                MANAGER, PER THE CITY CHARTER, HAD DISCRETION
                TO "APPOINT AND REMOVE" CITY EMPLOYEES ..................14

        B.      RECENT INTERVENING CASE LAW SUPPORTS THE
                DISTRICT COURT'S OPINION; 11 O.S. §29-104 DOES NOT
                CREATE A PROPERTY INTEREST IN FUTURE
                EMPLOYMENT ..............................................................................23

        C.      THE DISTRICT COURT PROPERLY DETERMINED THAT,
                EVEN ASSUMING PARMENTER HAD A PROPERTY
                INTEREST IN JOB, HE RECEIVED ADEQUATE PROCESS
                AND WAS TERMINATED FOR "GOOD AND SUFFICIENT
                CAUSE" ..........................................................................................27

VII.    CONCLUSION .........................................................................................33

**STATEMENT REGARDING ORAL ARGUMENT** ..........................................35

**CERTIFICATE OF SERVICE** .............................................................................35

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS** ....36

**CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS**  ....................................................................................................37

# <u>TABLE OF AUTHORITIES</u>

## <u>CASE LAW</u>                                                    <u>PAGE</u>

*Anglemyer v. Hamilton County Hosp.*,
    58 F.3d 533 (10th Cir. 1995) ........................................................................14

*Archuleta v. Colorado Dep't of Institutions*,
    936 F.2d 483 (10th Cir. 2001) ......................................................................15

*Bd. of Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972)......................................................................................15

*Benavidez v. City of Albuquerque*,
    101 F.3d 620 (10th Cir. 1996) ...............................................................29, 32

*Carnes v. Parker*,
    922 F.2d 1506 (10th Cir. 1991) ....................................................................15

*City of Tulsa v. Pub. Emps. Rel. Bd.,*
    845 P.2d 872 (Okla. 1990).............................................................................17

*City of Wewoka v. Rodman*,
    46 P.2d 334 (Okla. 1935).........................................................17, 18, 19, 21, 26

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532, 105 S. Ct. 1487, 84 L.Ed.2d 494 (1985) ........25, 27, 28, 29, 32

*Cowley v. West Valley City*,
    782 Fed. Appx. 712 (10th Cir. 2019) ...........................................................31

*Daitom, Inc. v. Pennwalt Corp.*,
    741 F.2d 1569 (10th Cir. 1984) ....................................................................26

*Darr v. Town of Telluride, Colo*,
    495 F.3d 1243 (10th Cir. 2007) ....................................................................23

*Driggins v. City of Oklahoma City*,
    954 F.2d 1511 (10th Cir. 1992) ....................................................................22

*Edwards v. City of Sallisaw*,
 339 P.3d 870 (Okla. 2014)...................................................................17, 20

*Goodwin v. Oklahoma City*,
 182 P.2d 762 (Okla. 1947)...........................................................................19

*Hennigh v. City of Shawnee*,
 155 F.3d 1248 (10th Cir. 1998) ...................................................................15

*Hoerman v. W. Heights Bd. of Educ*.,
 1995 OK CIV APP 130, 913 P.2d 684 .........................................................25

*Hunter v. Quick*,
 79 P.2d 590 (Okla. 1938)..............................................................................26

*In re City of Durant v. Cicio*,
 50 P.3d 218 (Okla. 2002)..............................................................................20

*Jones v. Bayless*,
 255 P.2d 506 (Okla. 1953)............................................................................17

*Koessel v. Sublette Cty. Sheriff's Dep't*,
 717 F.3d 736 (10th Cir. 2013) ......................................................................29

*Lancaster v. Indep. Sch. Dist. No. 5*,
 149 F.3d 1228 (10th Cir. 1998) ...................................................................15

*Litvak Packing Co. v. Amalgamated Butcher Workmen*,
 455 F. Supp. 1180 (D. Colo. 1978) ..............................................................31

*Mistletoe Exp. Svc. v. Motor Expressmen's Union*,
 566 F.2d 692 (10th Cir. 1977) ......................................................................31

*Mitchell v. City of Okmulgee*,
 494 P.3d 913 (Okla. Civ. App. 2021)......................................................23, 26

*Montgomery v. City of Ardmore*,
 365 F.3d 926 (10th Cir. 2004) ......................................................................27

*Moore v. Oklahoma City*,
    254 P. 47 (Okla. 1927) .............................................................................. 17, 20

*Oklahoma J. Pub. Co. v. City of Oklahoma City*,
    620 P.2d 452 (Okla. Civ. App. 1979) ......................................................... 16

*Powell v. Mikulecky*,
    891 F.2d 1454 (10th Cir. 1989) ............................................................. 28, 32

*Riggins v. Goodman*,
    572 F.3d 1101 (10th Cir. 2009) ............................................................. 27, 28

*Roberts v. Winder*,
    16 F.4th 1367 (10th Cir. 2021) .................................................................... 16

*Seibert v. University of Oklahoma Health Sciences Center*,
    867 F.2d 591 (10th Cir. 1989) ..................................................................... 28

*State ex rel. Trimble v. City of Moore*,
    818 P.2d 889 (Okla. 1991) ........................................................................... 17

*Town of Castle Rock, Colo. v. Gonzales*,
    545 U.S. 748 (2005) ..................................................................................... 15

*United States v. Otuonye*,
    995 F.3d 1191 (10th Cir. 2021) ...................................................................... 9

*West v. Grand County*,
    967 F.2d 362 (10th Cir. 1992) ..................................................................... 28

*Wheeler v. Wal-Mart Stores, Inc.*,
    978 F. Supp. 1455 (D. Wyo. 1997) ............................................................ 31

*White v. Basnett*,
    700 P.2d 666 (Okla. Civ. App. 1985) ......................................................... 22

## **STATUTES**

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1331 ................................................................................1

42 U.S.C. § 1983 ................................................................................1

11 O.S. §13-101 ................................................................................2

11 O.S. §13-109 ............................................................................3, 16

11 O.S. §14-101 ..............................................................................22

11 O.S. §29-104 ....................................................... 12, 16, 21, 23, 24 26

12 O.S. §19-104 ..............................................................................11

85 O.S. §49-111 ..........................................................................24, 25

85 O.S. § 341(B) .........................................................................25, 26

## **STATEMENT OF RELATED OR PRIOR APPEALS**

Pursuant to Fed.R.App.Proc. 28.2(C)(1), Appellee would state that there are no related or prior appeals of this matter

## <u>ANSWER BRIEF OF APPELLEE CITY OF NOWATA, OKLAHOMA</u>

COMES NOW Appellee City of Nowata, Oklahoma, and pursuant to Fed.R.App.Proc. 28(b) and 10th Cir. R. 31.3(A), hereby submits this Answer Brief. For the reasons that follow, the Court should affirm the District Court's order and judgment.

## I.    JURISDICTIONAL STATEMENT

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331, as it was presented with questions arising under 42 U.S.C. § 1983.  (Aplt. App. at 7).  The District Court issued an Opinion and Order on November 4, 2020, granting summary judgment to Appellee the City of Nowata.  (Aplt. App. at 134-140).  Judgment was entered the same day.  (Aplt. App. at 141).  Appellant Steve Parmenter filed a Notice of Appeal on December 4, 2020.  (Aplt. App. at 142).  This Court's jurisdiction is based on 28 U.S.C. § 1291.

## II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

**Issue 1**:    Whether summary judgment was appropriate on Parmenter's §1983 procedural due process claim insofar as Parmenter lacked a property interest in his position with the City?

**Issue 2**:    Assuming Parmenter had a "property interest" in his job, whether summary judgment was appropriate because Parmenter was terminated for "good and sufficient cause" and received all the process that was due under the circumstances?

1

## III.    STATEMENT OF THE CASE

This appeal involves Appellant Steve Parmenter's ("Parmenter") employment with the City of Nowata ("City") as a Fire Chief in 2017 and thereafter.  For several years, the City dealt with significant problems with Mr. Parmenter's job performance.  He was repeatedly counseled and warned about these problems.  In 2019, the City elected to terminate his employment.  In this lawsuit, Parmenter claimed that his due process rights were violated because he was not provided adequate notice or an opportunity to be heard concerning his termination.  (Aplt. App. at 7).  The District Court rejected these arguments, finding that Parmenter lacked a property interest in his position and, even assuming otherwise, the City provided Parmenter with adequate process and otherwise established "good and sufficient cause" for his termination.  (Aplt. App. at 134-140).  This appeal ensued.

## IV.    SUMMARY OF THE RECORD

### A.    Factual Background

Parmenter is the former appointed Fire Chief for the City of Nowata, Oklahoma.  (Aplt. App at 7, ¶4; 16, ¶1).  The City of Nowata is a municipality located in the State of Oklahoma.  The City has adopted a municipal Charter pursuant to 11 O.S. §13-101.[1]  (*E.g.*, Aplt. App. at 57-61).  For that reason, the City is

---

[1] "Any city or town containing a population of two thousand (2,000) inhabitants or more, as shown by the latest federal census or other census recognized by the laws of Oklahoma, may frame a charter for its own government."  11 O.S.

considered a "home rule" city.  This means that the City's Charter prevails over any state law that conflicts with the charter.  11 O.S. §13-109.[2]

At all relevant times, Melanie Carrick ("Carrick") was the City Manager of Nowata.  (Aplt. App. at 88, p. 50:4-8).  In 2017, Carrick was appointed to her position as City Manager by the Board of Commissioners for the City and was therefore considered the "head of the Municipal Government, under the direction and supervision of the Board of Commissioners." (Aplt. App. at 60).  In her position as City Manager, and pursuant to the City Charter, Carrick retained broad administrative powers, including the power to "appoint and remove all heads of departments, and all subordinate officers and employees of the City." (Aplt. App. at 59-60).  The City's Charter placed no substantive restrictions on her ability to terminate members of the fire department.  (*Id.*).  The City did <u>not</u> adopt any state statutes that would have placed any such substantive restrictions on her ability to "appoint and remove" department heads or subordinate employees.  (*Id.*).

---

§13-101; *see also* OKLAHOMA CONSTITUTION, Art. 18, §3(a) (authorizing charters for cities, defining procedures for same, and noting that "all courts shall take judicial notice of said charter").

[2] "Whenever a charter is in conflict with any law relating to municipalities in force at the time of the adoption and approval of the charter, the provisions of the charter shall prevail and shall operate as a repeal or suspension of the state law or laws to the extent of any conflict."  11 O.S. §13-109.

In 2018, the City of Nowata issued an updated Personnel Manual that governed the policies, rules, pay and benefits for City employees. (Aplt. App. at 63). The Personnel Manual noted, in several places, that the relationship between the City and an employee was considered an "at-will" employment relationship. (*Id.*). The Manual stated:

> No employee or representative of the City has any authority to enter into an employment contract or change the "at will" employment relationship, or to make any agreement contrary to the foregoing.
> . . .
> Your employment with the City is entered into voluntarily and you are free to resign at any time. Similarly, the City may terminate your employment with or without cause or for violation of the rules, policies, procedures, or other causes, for the good of the service, for any reason, or no reason.
> . . .
> All employees must remember that employment may be terminated with or without cause or notice, at any time by the employee or the City of Nowata.
> . . .
> Dismissal may result with or without cause of notice . . . Dismissal may also be used with or without cause, or simply for the good of the City, at the discretion of the City Manager.
> . . .
> Any employee may be released at any time during his/her period of employment with or without cause or notice . . .

(Aplt. App. at 63-65) (Personnel Manual, §§1-1, 1-3, 9-1, 9-2) (underline in original). Parmenter received the Personnel Manual and agreed to review it. (Aplt. App. at 69).

On August 31, 2017, Parmenter received a formal, detailed, and written reprimand from Carrick. (Aplt. App. at 16, ¶4; at 27 [written reprimand]).[3] At that time, he was also removed from his role as Director of EMS (Emergency Medical Services) for the City. (*Id.*). The written reprimand outlined thirteen (13) separate infractions and Parmenter received counseling for each on that date. (*Id.*). The infractions were as follows:

- Altering employee timesheets;

- Falsification of own timesheets;

- Interfered with the City's relationship with Harmon Foundation;

- Provided false information to a supervisor;

- Hindering the accounting process by holding checks that need to be deposited and not turning them in for deposit in a timely manner;

- Allowing multiple employees to take comp time that they had not accrued;

- Issuance of "comp time" not in accordance with the City's personnel manual;

- Fostering and allowing to continue an environment of low morale in the department;

- Creating feelings of fear of retribution or retaliation in employees in the department;

---

[3] Parmenter had also received a verbal reprimand by the previous City Manager related to ordering problems and vacation time. (Aplt. App. at 30; at 106; *see also* Aplt. App. at 88, p. 52-53; at 89, p. 61).

- • Creating a harassing, hostile and threatening work environment for employees;

- • Non-compliance with hiring policy;

- • Holding volunteer pay until dues are paid;

- • Scheduling part-time workers for more than part-time hours.

(Aplt. App. at 16-17, ¶4; 27).  In addition, on the date of the written reprimand, Parmenter was instructed that he was to work at least one regular shift per week as a firefighter.  (Aplt. App. at 17, ¶5).  This was for the purpose of fostering better relationships with employees in the department and to boost morale.  (Aplt. App. at 27; at 127:14-24 [Carrick testimony on this issue]).

Parmeter was aware, at that time, that any further infractions could result in disciplinary action, underline termination.  (Aplt. App. at 17, ¶6).  The written reprimand itself noted that it was the "only warning that [Parmenter] will receive due to the serious and damaging nature of the offenses.  Any further infractions will result in disciplinary action up to an including termination of employment."  (Aplt. App. at 27; 34:13-20) (underline added).  The written reprimand noted, at the top, that it was the "Final Warning."  (Aplt. App. at 27) (underline added).  In addition, Parmenter testified:

> Q:    So you were aware as of August 31, 2017, that if there were any other disciplinary actions related to this, you could have been terminated; is that fair?

6

A:     Yes.

(Aplt. App. at 34:21-24).

For "a year or a year and a half" prior to his termination, Carrick continued to address with Parmenter the items contained in his written reprimand. (Aplt. App. at 17, ¶7; at 36:13-15 ["We talked about different things on this whole issue throughout a year or year and a half with her."]; at 111:9-22; at 125:16-22). Beginning in March of 2018, Carrick and Parmenter had at least two discussions related to his job, and even discussed changes to Parmenter's "job description," to accommodate him. (Aplt. App. at 17, ¶8; 39). At that time, Parmenter was given the opportunity to discuss his view of his job requirements in the context of the previous reprimand, including his views on whether he could perform certain job functions. (Aplt. App. at 39:19-24; 40-41).

In May of 2018, Parmenter emailed a copy of his job description to the City Attorney (John Heskett) to "show [Heskett] what [Carrick] was wanting." (Aplt. App. 42:1-3). In May of 2018, Parmenter, Carrick and Mr. Heskett had a meeting that lasted 1.5 hours or longer. (Aplt. App. at 17, ¶9; 43). This meeting was related to the Fire Chief job description and Parmenter's duties as Fire Chief. (*Id.*).

Parmenter admitted that, following the written reprimand, he never worked one regular shift per week as a firefighter. (Aplt. App. at 30-32) ("Q: . . . Did you ever work a shift, one regular shift per week as a regular fireman as you advised to

do on 8-31-2017?  A:  No.").  Parmenter concedes this issue in his Brief in Chief filed in this appeal.  (Brief in Chief at 2-3).  Parmenter believed "there wasn't a need for [him] to do that."  (Aplt. App. at 117:17).

In deposition, Parmenter also agreed that morale was low in the fire department and EMS department.  (Aplt. App. at 105; 110:22-25).  Carrick testified that morale was "horrible in the department."  (Aplt. App. at 120:10).  The Chief of Police Mike McElhaney also stated, in his deposition, that morale in the fire department was low prior to Parmenter's termination.  (Aplt. App. at 95; at 133).

In addition, following the reprimand and the various conferences between Carrick, Parmenter, and Heskett, the City continued to receive complaints about Parmenter, including on the very issues identified in his previous written reprimand:

- In March of 2019, Carrick noted that an EMS department employee registered a lengthy complaint concerning Parmenter related to a variety of topics, including feeling "blown off" by Parmenter and work scheduling problems.  Carrick intervened; noted the problems with scheduling at EMS; and noted that various employees feared repercussions from Parmenter from scheduling changes.  Carrick had a three (3) hour meeting with EMS employees and noted the following:

  "They [EMS employees] each feel the low morale is due to what the[y] call Steve's "My way or the highway" attitude.  The lack of interest in what the employee needs are, special privilege given to one particular employee on scheduling issues, as well as, the "My way or the highway" attitude by that employee.  They are unhappy and feel tension in the work environment between them and the supervisor.  Because the[y] have been to the supervisor on multiple occasions with no resolve, they feel like

they have no options and no where to turn for assistance other than to come to me." (Aplt. App. 51).

- On March 7, 2019, Carrick noted that EMS employees were improperly documenting their time records.

- Carrick also noted an employee's report that morale was "horrible" in the EMS department and that the biggest hurdle to morale was "Steve Parmenter." The employee also indicated Parmenter was the biggest hurdle to the functioning of the City's two emergency services. (Aplt. App. 53).

- On March 4, 2019, Police Chief Mike McElhaney filed a report noting conflict between EMS employees and Parmenter regarding scheduling issues; alleged favoritism by Parmenter toward one employee; and Parmenter's alleged creation of a new work schedule in collaboration with only one employee. (Aplt. App. 54).

- On March 11, 2019, Carrick drafted a Memorandum of Reference documenting her conversation with Parmenter regarding several significant personnel issues, including issues related to improper time documentation for certain employees; and allowing a non-supervisory employee to deliver a verbal reprimand to another employee, among other things. (Aplt. App. 55).

- On March 12, 2019, a full-time firefighter informed Carrick that he feared retribution if he filled out an employee questionnaire. (Aplt. App. 55).[4]

---

[4] In his summary judgment response brief, Parmenter made a generic hearsay objection, but this objection was not specific and insufficient to preserve for appeal. (*E.g.*, Appl. App. at 72, ¶7). The objection does not refer to any specific statements nor show how such statements constitute inadmissible hearsay. *See United States v. Otuonye*, 995 F.3d 1191, 1205 (10th Cir. 2021) ("To preserve an objection for appeal, a party must 'indicate to the district court the precise ground for [its] complaint.'"). Further, the records at issue were not being used to prove the truth of the matter asserted in the statements, but to show that the complaints had been made and that

In deposition, Carrick confirmed the facts mentioned above regarding time sheet problems and low morale in the department.  She stated:

Q.    Okay.  So tell me then what the cause was of his termination.
A:    There were a lot of reasons.
Q:    Please provide them.
. . .
A:    I cannot recall all of them off the top of my head . . . Some of them were morale, time sheets.  But without looking at that, right off the top of my head, those are the two that – but the morale was the biggest.
Q:    Okay.  And what is it with the morale?  That he inspired morale? He was a –
A:    No.
Q:    Tell me about it then.
A:    The morale was horrible in the department.  It ended up affecting two departments.  It never got better.
Q:    All right.
A:    It was destroying those two services.
Q:    All right.  So you believe that he was having a negative impact on morale?
A:    Yes.

(Aplt. App. at 86, pp. 20-21).

On April 8, 2019, Carrick, in her capacity as City Manager, provided Parmenter with a letter indicating that he was being terminated "for the good of the service" and for "good and sufficient cause."  (Aplt. App. 56).  This occurred at a face-to-face meeting with Parmenter, along with one member of the City Council.

---

Carrick was on notice of them.  (Aplt. App. at 131) (testimony of Carrick stating she was on notice of these issues prior to termination).  Further, Parmenter himself submitted Carrick's deposition testimony to the District Court, and this testimony confirmed Carrick's understanding of employee complaints.  (Aplt. App. at 85-91).

(Aplt. App. at 112).  Carrick stated that, after handing him the termination letter, she provided him with an opportunity to speak.  (Aplt. App. at 87, p. 32:9-14).  He read it and said "really?" and asked "why," and she told him "[i]t's on the sheet."  (Aplt. App. at 112:15-19).  Parmenter did not ask any further questions or make any further comments.  (*Id.*).  Carrick considered this a type of post-termination hearing.  (Aplt. App. at 87, p. 32:9-14; at 124).

Following his termination, Parmenter did not request any kind of meeting or hearing with the City.  (Aplt. App. at 47:20-24; at 113).  He also did not contact the City attorney.  (*Id.*).  Instead, he filed the present lawsuit.

## B.    Parmenter's Procedural Due Process Claim

In this lawsuit, Parmenter claimed that his procedural due process rights were violated because he was "terminated without cause, and with neither pre-termination nor post-termination procedures."  (Aplt. App. at 7, ¶5).  He pursued a claim under 42 U.S.C. §1983 against the City.  (*Id.*).  Parmenter claimed he had a "property interest" in his job pursuant to Oklahoma state law (11 O.S. §29-104[5]).

The City, on the other hand, contended that Parmenter was an at-will employee pursuant to the City's Charter, and as reflected in its Personnel Manual,

---

[5] "The chief and members of all paid municipal fire departments shall hold their respective positions unless removed for a good and sufficient cause as provided by applicable law or ordinance."  12 O.S. §19-104.

and was not entitled to due process protections.  In addition, the City contended that it provided adequate due process to Parmenter and certainly provided "good and sufficient cause" for Parmenter's termination.  Following discovery, the City filed a Motion for Summary Judgment.  (Aplt. App. at 15).

### C.     District Court Opinion and Order

On November 4, 2020, the District Court issued its Opinion and Order granting summary judgment to the City.  (Aplt. App. at 134-140).  The District Court first determined that Parmenter lacked a property interest deserving of due process protection.  The Court noted that, in Oklahoma, a city's charter governs over conflicting state law and that, for the City of Nowata, employees were considered "at will" and "may be fired with or without cause."  (Aplt. App. at 139).  For that reason, Parmenter lacked a property interest subject to due process protections.

The Court went on to hold that, even assuming 11 O.S. §29-104 applied to Parmenter, the undisputed facts showed that he was fired for "good and sufficient cause."  (Aplt. App. at 140).  The Court noted:

> On August 31, 2017, [Parmenter] received a formal, documented reprimand listing numerous issues and also ordering him to work at least one regular shift per week as a firefighter. Accordingly, he was aware that any further infractions could lead to disciplinary action – including termination – against him.  For well over a year after the written reprimand, Carrick continued to address items listed in the written reprimand.  During that time, and in contravention of the reprimand, he failed to work a single fire shift.  Moreover, after meeting with fire department employees, Carrick learned of other issues –

including that department morale was abysmal due to favoritism of one employee over the others, and that employees were trading shifts without documenting the trades, and then directly compensating each other for covered shifts.

The undisputed record supports the City's position that Parmenter's termination was for "good and sufficient cause.

(Aplt. App. at 140).  For that reason, the District Court granted the City's Motion for Summary Judgment and entered judgment in favor of the City as a matter of law.  (Aplt. App. 141).

## V.    SUMMARY OF ARGUMENT

This Court should affirm the District Court's order.  First, Parmenter did not have a protected property interest in his position with the City.  The City was a "home rule" or charter city.  Hence, the City's Charter superseded contrary state law.  The City's Charter did not impose any substantive restrictions on the City Manager's ability to "appoint and remove" City employees.  The City did <u>not</u> adopt state law that would support a "for cause" termination standard.  To the contrary, it issued a Personnel Manual that established exactly the opposite.  Insofar as Parmenter was an "at-will" employee, he lacked a property interest in his position as Fire Chief.

Second, even assuming Parmenter had a "legitimate expectation of continued employment" that required due process protection, it was undisputed that Parmenter received adequate due process and was terminated for "good and sufficient cause." For over a year and a half, Parmenter was aware of the job deficiencies at issue,

along with the City's position with respect to those deficiencies. These issues were outlined in a lengthy and detailed written reprimand. He was warned that further infractions would result in termination. He addressed these issues for over a year and a half with City officials in various face-to-face meetings. In 2019, the very job deficiencies at issue continued, including (1) his refusal to work a single fire shift as instructed and (2) low morale in the fire department and EMS department. Hence, the City properly terminated his position for "good and sufficient cause."

## VI.   ARGUMENTS AND AUTHORITIES

### A.   THE DISTRICT COURT PROPERLY DETERMINED THAT PARMENTER LACKED A PROPERTY INTEREST IN FUTURE EMPLOYMENT INSOFAR AS THE CITY MANAGER, PER THE CITY CHARTER, HAD DISCRETION TO "APPOINT AND REMOVE" CITY EMPLOYEES

The District Court properly granted summary judgment in this case, as Parmenter lacked a property interest in his job as Fire Chief for the City of Nowata.[6] The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, §1. "[P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision."

---

[6] This Court reviews summary judgments *de novo*. *See Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995). Per 10th Cir. Rule 28.1, the District Court's order is contained in the record at: Aplt. App at 134-140.

*Archuleta v. Colorado Dep't of Institutions*, 936 F.2d 483, 490 (10th Cir. 2001).  To determine whether a plaintiff was denied procedural due process, courts engage in a two-step inquiry:

> (1)   Did the individual possess a protected property interest to which due process protection was applicable?

> (2)   If so, was the individual afforded an appropriate level of process?

*See Hennigh v. City of Shawnee*, 155 F.3d 1248, 1253 (10th Cir. 1998).

A property interest in continued public employment is not created by the Constitution.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  Rather, a property interest in continued public employment must "stem from an independent source such as state law."  *Id.*; *see also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1234 (10th Cir. 1998).  State law sources for property interests can include statutes, municipal charters or ordinances, and express or implied contracts.  *See Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991).  A public employee must have a "legitimate claim of entitlement" to continued public employment for a property interest to arise; a "unilateral expectation" of continued public employment is not sufficient to create a property interest.  *Roth*, 408 U.S. at 577.[7]

---

[7] Whether state law creates a right that "constitutes a property interest for purposes of the Fourteenth Amendment ... is ultimately [a question] of federal constitutional law."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757

Here, Parmenter claims he possessed a property interest in his position as Fire Chief pursuant to a <u>state</u> statute, 11 O.S. § 29-104, which provides that a fire chief and members of all paid municipal fire departments "shall hold their respective positions unless removed for a good and sufficient cause as provided by applicable law or ordinance." However, this state statute does not apply to Parmenter because the City had adopted a <u>City Charter</u> that governed Parmenter's employment relationship, and the Charter gave the City Manager exclusive control over the hiring and firing of department heads and subordinate employees. (Aplt. App at 59).

According to 11 O.S. §13-109:

> Whenever a charter is in conflict with any law relating to municipalities in force at the time of the adoption and approval of the charter, the provisions of the charter shall prevail and shall operate as a repeal or suspension of the state law or laws to the extent of any conflict.

11 O.S. §13-109. In Oklahoma, a city's "[c]harter provisions not inconsistent with the Constitution supersede state statutes pertaining to municipal affairs and become the superior law in matters pertaining to purely municipal matters." *Oklahoma J. Pub. Co. v. City of Oklahoma City*, 620 P.2d 452, 453 (Okla. Civ. App. 1979). Charter cities are referred to as "home-rule" or "self-rule" cities, as their charter provisions have the full force and effect of law for matters of local concern. *E.g.,*

---

(2005). This presents a legal question, not a factual question. *See Roberts v. Winder*, 16 F.4th 1367, 1377 (10th Cir. 2021).

*City of Wewoka v. Rodman*, 46 P.2d 334, 335-336 (Okla. 1935). The charter-city concept is a basic principle of Oklahoma government: the principle is enshrined in the Oklahoma Constitution, art. 18, §3(a). With the approval of a municipality's charter, the State of Oklahoma has surrendered a portion of its authority by giving home-rule cities sovereignty over their "municipal affairs." *See Moore v. Oklahoma City*, 254 P. 47, 51 (Okla. 1927); 11 O.S. §13-107 (noting that a properly-enacted city charter "shall become the organic law of the municipality").

Employment matters at the local level are matters of purely municipal concern and, consequently, a City's employment-related charter provisions prevail over conflicting state law. *See Rodman,* 46 P.2d at 335 ("The law is clear that the control of a freeholder charter city over the personnel of its fire department is solely a matter of municipal concern, and hence not subject to legislative control."); *Jones v. Bayless*, 255 P.2d 506, 512 (Okla. 1953) (noting matters related to demotion of city policemen were controlled by charter of City of Tulsa and not by "general laws"); *State ex rel. Trimble v. City of Moore*, 818 P.2d 889, 898 (Okla. 1991) (holding that compensation paid to mayor and council members was a matter of municipal concern and city charter controls over statutory law).[8]

---

[8] There are some exceptions to this rule, e.g., where the State has enacted a statute of obvious statewide concern such as the Fire and Police Arbitration Act. *See, e.g., City of Tulsa v. Pub. Emps. Rel. Bd.,* 845 P.2d 872, 875 (Okla. 1990). But, where, as here, no overriding state statute applies, a Charter City has broad discretion to regulate employment-related issues. *E.g., Edwards v. City of Sallisaw*, 339 P.3d

For instance, in *Rodman, supra*, the Oklahoma Supreme Court addressed the home-rule statute in a case where an assistant fire chief claimed he was wrongfully terminated without cause. The Court faced the question of whether a city charter provision supplanted the state statute requiring a showing of "good and sufficient" cause for removal. The City of Wewoka's charter provided that the local police commissioner had "the right to fix the qualifications for and to employ and discharge such men as members of the fire department of the City of Wewoka as he shall see fit, restrained only by the laws of the State of Oklahoma, this charter and the ordinances and resolutions of said city." *Rodman*, 46 P.2d at 334. The Court held that, despite the reference to the "laws of the State of Oklahoma," the charter provision superseded all state law governing the hiring and firing of employees such as the plaintiff. The Court stated:

> The adoption of a freeholder charter immediately supersedes all state laws in conflict therewith, as to purely municipal affairs. The adoption of the charter repeals all such laws that conflict with the charter. It follows that the moment the charter is adopted state laws as to purely municipal affairs, that conflict with the charter, are no longer state laws as to the particular locality. We think a charter clause making the charter, or any part of it, subject to state law is limited to the laws of the state that by their own force are operating upon the city. We conclude that the right to remove members of the Wewoka fire department is governed by the specific provisions of the charter, and not by state law.

---

870, 876 (Okla. 2014) ("We have not before interfered with a home-rule city's right to set the administrative day-to-day duties of its police chief.").

*Rodman*, 46 P.2d at 336.  The Court further noted that "[i]t would be a wild stretch of credulity to believe that the city in attempting to gain the power of self-government intended to subject the exercise of such newly acquired powers to legislative control." *Id.*  In short, since the City charter gave the police commissioner the right to employ and discharge members of the fire department, any state law that purported to regulate this employment issue was inapplicable.  *Id.* at 336.

Similarly, in *Goodwin v. Oklahoma City*, 182 P.2d 762 (Okla. 1947), the Oklahoma Supreme Court sustained a city's discharge of a police officer, whose employment was not for a specified period, even though certain state statutes enumerated the grounds for discharge of a police officer and further provided that no police officer could be discharged by the governing body without "cause."  The Court noted that the city's charter became the organic law of the city, superseding the general laws relating to municipalities in matters of purely municipal concern. *Id.* at 764-765.  The Court held that "it [was] firmly established that the provisions of the city charter relating to the removal or discharge of appointed officers or employees, are solely matters of municipal concern and control over the general laws." *Id.* at 764.  Finally, the Court held that the city manager had broad authority, per the city charter, to remove the plaintiff in the interests of the city insofar as general state law statutes were inapplicable.  *Id.* at 765.

Finally, in *Moore*, 254 P. at 51, the Court addressed whether the city manager's power to hire and fire the police chief and other officers under a new managerial form of government (where such power was vested solely in the manager) infringed on matters that were of state concern, rather than purely local matters. The Court held that it did not and affirmed the city's authority to set the powers of a city manager and local police chief by charter. *Id.* at 51.

In response to this case law, Parmenter briefly cites *In re City of Durant v. Cicio*, 50 P.3d 218 (Okla. 2002), and argues that *Cicio* held that "firefighter and police statutes are not matter of merely municipal concern, but are of statewide interest." (Brief in Chief at 14). However, as the District Court noted, *Cicio* has been confined to its facts by subsequent case law insofar as, in that case, the City of Durant was <u>not</u> a charter (or home-rule) city, but was organized and run by <u>state</u> statutes. *See Edwards v. City of Sallisaw*, 339 P.3d 870, 875 n.9 (Okla. 2014). Hence, *Cicio* does not overrule the numerous cases which hold that a City may, through its charter, regulate the employment relationship of an appointed Fire Chief.

As noted above, the City of Nowata is a home-rule city and has adopted a City Charter. The Charter grants the City Manager unrestricted authority to "appoint and removal all Heads of Departments, and all subordinate officers and employees of the City." (Aplt. App. at 59). The appointment and removal of a City employee is a matter of local concern, and as such, the City Charter supersedes all state laws that

20

would otherwise govern the employment relationship between the City and its employees. The statute relied upon by Parmenter (11 O.S. §29-104) would require the City Manager to show "good and sufficient cause" before terminating Parmeter's position – a standard that is not contained in the City Charter – and would substantially limit the discretion of the City Manager. But, there is no basis in the record to conclude that the City adopted any state statutes dealing with the termination of fire department personnel, let alone one that would impose a heightened burden on the City Manager or otherwise limit her discretion.[9] As noted in *Rodman*, it would be "an exceedingly strange thing for a city engaged in the attempt to acquire the right to determine its purely municipal affairs, to intend that the state law should apply to such affairs." *Rodman*, 46 P.2d at 335.[10]

---

[9] Parmenter claims that the City Charter does not conflict with the state statute and that the state statute, therefore, *must* apply. But, this is inaccurate: a direct conflict exists because the state statute imposes substantive requirements that are not contained in the City Charter. Hence, the Charter provision (governing the City Manager's largely unrestricted right to "appoint and remove" employees) supersedes the conflicting state law. 11 O.S. §13-109.

[10] In fact, the language of the Charter in *Rodman* (i.e., the police commissioner had "the right to fix the qualifications for and to **employ and discharge** such men as members of the fire department . . . as he shall see fit") is extremely similar to the language in the City of Nowata's Charter (i.e., "The powers and duties of the City Manager shall be . . . to **appoint and remove** all Heads of Departments, and all subordinate officers and employees of the City."). (Aplt. App at 59) (bold added). In *Rodman*, the Court held that, in light of the Charter provision, the state statute (requiring a showing of "good and sufficient cause") did <u>not</u> apply. *Rodman*, 46 P.2d at 335.

For that reason, the state statute is inapplicable, and the City Manager had broad discretion to terminate an employee in the best interests of the City.  This means Parmenter had no property interest in his job, and that his due process claim failed as a matter of law.  *See Driggins v. City of Oklahoma City*, 954 F.2d 1511 (10th Cir. 1992) (affirming dismissal of procedural due process claim against charter city where termination was for "the good of the service").

Parmenter claims that the District Court erred by relying on the Personnel Manual to conclude that the Parmenter was an "at-will" employee because the Personnel Manual was not the same thing as the City Charter.  While it is true that the specific terms of the Personnel Manual were not included in the Charter for the City, a municipality has statutory authority to issue "ordinances, rules and regulations" for any purpose mentioned in Title 11 or for "carrying out their municipal functions."  11 O.S. §14-101; *see also White v. Basnett*, 700 P.2d 666 (Okla. Civ. App. 1985) ("The governing body of a municipality may enact ordinances, rules and regulations in order to carry out their municipal functions.").

The Personnel Manual adopted by the City of Nowata was part and parcel of the City's efforts to carry out its functions as a municipality.  The Personnel Manual was consistent with the unrestricted authority of the City Manager to "appoint and remove" City employees in her discretion.  In addition, the Personnel Manual was designed to "introduce [the employee] to the City of Nowata and [the employee's]

job with the City" and to "acquaint [the employee] with the policies, rules, pay and benefits which apply to [the employee's] employment with the City. (Aplt. App. at 63). The Personnel Manual, which Parmenter received and agreed to review, also made it clear – repeatedly – that his employment was on an <u>at-will basis</u>. (Aplt. App. at 63-69). At no place in the Manual did the City adopt the state statute (11 O.S. §29-104) relied upon by Parmenter, or otherwise create some type of expectation that terminations would be based on a "just cause" or "good cause" standard. For that reason, the Personnel Manual supports the district court's holding that Parmenter lacked a property interest in his job. *See Darr v. Town of Telluride, Colo*, 495 F.3d 1243, 1252 (10th Cir. 2007) ("At-will employees lack a property interest in continued employment.").

### B. RECENT INTERVENING CASE LAW SUPPORTS THE DISTRICT COURT'S OPINION; 11 O.S. §29-104 DOES NOT CREATE A PROPERTY INTEREST IN FUTURE EMPLOYMENT

After the District Court's opinion was issued in this matter, the Oklahoma Court of Civil Appeals decided a very similar case which supports the District Court's opinion, and effectively disposes of Parmenter's due process arguments. In *Mitchell v. City of Okmulgee*, 494 P.3d 913 (Okla. Civ. App. 2021), a former Fire Chief[11] brought an action against a city claiming his termination was in violation of

---

[11] He was represented by the same attorneys who represent Parmenter in this appeal.

(1) a worker's compensation retaliatory discharge statute and (2) his due process rights. The Fire Chief sustained an on-the-job injury in 2013; filed a workers' compensation claim in 2014; and started receiving benefits thereafter. Pursuant to state law, the City continued to pay his salary and, in exchange, he assigned his worker's compensation benefits to the City. However, state law (85 O.S. §49-111) prohibited the City from continuing to pay him as a firefighter after twelve months of paid injury leave. The City therefore informed the Fire Chief of these provisions and (among other things) informed him that the City had no choice but to terminate his employment when the twelve months of injury leave ended. *Id.* at 915. The City also advised him of his right to apply for disability pension with the Oklahoma Firefighters Pension Retirement System. *Id.*

The Fire Chief became disgruntled with his termination and sued the City for worker's compensation retaliation and for violation of his right to "due process." He claimed he was terminated without "good and sufficient cause" or a hearing in violation of 11 O.S. §29-104 (i.e., the very statute relied upon by Parmenter in the present case). The trial court found in favor of the Fire Chief as a matter of law and, after a bench trial, awarded him $120,000.00. *Id.*

The Oklahoma Court of Civil Appeals reversed and remanded. *Id.* at 917. The Court first held that the worker's compensation retaliation provision was not applicable because the statute referenced above (85 O.S. § 49-111) applied

"notwithstanding" the worker's compensation statutes, thereby rendering the retaliation provisions of the worker's compensation statutes inapplicable to his termination. *Id.* at 915.

In addition, as relevant here, <u>the Court rejected the Fire Chief's due process claim</u>. *Id.* The Court first found that the City had "good and sufficient" cause for his termination pursuant to the provisions of §49-111, which indicated that a firefighter may not receive full salary after twelve months (but may enter the retirement system as a disabled firefighter). *Id.* at 916. The Court also rejected the Fire Chief's argument that he was entitled to further due process protections:

> We further disagree that Fire Chief was entitled to a hearing. First, Fire Chief failed to explain how § 49-111 creates a "legitimate expectation of continued employment" entitling him to due process protection. As the movant, it was Fire Chief's burden to show each element of his claim was satisfied by the undisputed facts as a matter of law. **Fire Chief's conclusory assertions that § 29-104 made him a merit employee entitled to due process protection do not satisfy this burden.**
>
> Second, even if Fire Chief had a legitimate expectation of continued employment that required due process protection, we find the process provided was sufficient. A public employee with a legitimate property interest is "constitutionally entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and a pretermination opportunity to present his side of the story." *See Hoerman v. W. Heights Bd. of Educ.*, 1995 OK CIV APP 130, ¶8, 913 P.2d 684 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L.Ed.2d 494 (1985)). The letter informed Fire Chief of the action City intended to take; explained the reasons it was taking such action; cited the law it was mandated to follow; and encouraged him to respond if he disagreed or wanted to discuss the matter. Fire

Chief does not explain what a hearing would have accomplished under these circumstances.

We find Fire Chief could not recover under 85 O.S. § 341(B) as a matter of law because a more specific statutory scheme applies. **We further find he failed to show, as a matter of law, that he was entitled to due process protection or that City violated his due process rights.**

*Mitchell,* 494 P.3d at 916-917 (bold added) (some internal cites omitted).[12]

The same is true here.  The statute relied upon by Parmenter (11 O.S. §29-104) did not make Parmenter a "merit employee" or require the City to provide him with any further due process protections.  Further, similar to *Mitchell*, Parmenter was provided a lengthy reprimand that specifically outlined the problems with Parmenter's employment relationship with the City.  (Aplt. App. at 27).  Thereafter, Parmenter had several face-to-face meetings with City officials about his employment relationship.  Nevertheless, in 2019, it is undisputed that these problems remained.  He admittedly did not complete any shifts as a firefighter.  (Aplt. App. at 30-32).  And he further admitted morale in the fire department was suffering.  (Aplt. App. at 105; 110:22-245).  Pursuant to *Mitchell*, the City had "good and sufficient

---

[12] This Court generally follows the decisions of any intermediate state court unless other authority convinces the Court that the state's highest court would rule otherwise.  *See Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). Notably, previous Oklahoma case law has held that a letter notifying the employee of the termination and the employee's subsequent return of work-related equipment was sufficient to satisfy basic notice requirements.  *E.g., Hunter v. Quick*, 79 P.2d 590 (Okla. 1938); *see also Rodman*, 46 P.2d at 336-37 (finding abbreviated notice to employee sufficient to establish "good and sufficient cause").

26

cause" to fire Parmenter, and nothing further was required of the City. For that reason, the District Court should be affirmed.

### C. THE DISTRICT COURT PROPERLY DETERMINED THAT, EVEN ASSUMING PARMENTER HAD A PROPERTY INTEREST IN JOB, HE RECEIVED ADEQUATE PROCESS AND WAS TERMINATED FOR "GOOD AND SUFFICIENT CAUSE"

In addition, the District Court properly determined that, even assuming Parmenter had a "legitimate expectation of continued employment," the process utilized by the City satisfied basic due process requirements. "An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation omitted). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* (citations omitted). A pretermination hearing generally requires: (1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence and (3) an opportunity for the employee to present his side of the story. *See Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004) (quoting *Loudermill*, 470 U.S. at 546); *see also Riggins v. Goodman*, 572 F.3d 1101 (10th Cir. 2009).

27

"[T]he pretermination 'hearing,' though necessary, need not be elaborate." *Loudermill*, 470 at 545. "A full evidentiary hearing is not required prior to an adverse employment action." *West v. Grand County*, 967 F.2d 362, 367 (10th Cir. 1992). Instead, the "individual entitled to due process protection needs only to be given notice and an opportunity to respond." *Id.* "The central purpose of the pretermination hearing is merely to serve as 'an initial check against mistaken decisions – essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *See Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989) (citing *Loudermill*, 470 U.S. at 545-46). *Loudermill* does not require "that there be delay between the notice of a charge and the public employee's opportunity to respond." *Powell*, 891 F.2d at 1462.

> In *Riggins,* this Court explained:
>
> We have upheld as sufficient to meet these requirements informal proceedings, such as pretermination warnings and an opportunity for a face-to-face meeting with supervisors, *see Seibert v. University of Oklahoma Health Sciences Center*, 867 F.2d 591, 598 (10th Cir. 1989), and even a limited conversation between an employee and his supervisor immediately prior to the employee's termination, *see Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989). The objective of the process is "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."

*Riggins*, 572 F.3d at 1108 (cites omitted) (citing *West*).

With respect to post-termination proceedings, "when the employee has had a meaningful opportunity to explain his position and challenge his dismissal in pre-termination proceedings," then "simply giving the employee 'some opportunity' to present his side of the case 'will provide a meaningful hedge against erroneous action.'" *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996) (quoting *Loudermill*, 470 U.S. at 543). That is, "[t]o the extent the state provides more elaborate procedures prior to termination than are required under *Loudermill*, it need not duplicate them after termination." *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013).

In this case, the District Court properly held that Parmenter received adequate due process prior to his termination and that he was fired for "good and sufficient cause." On August 31, 2017, Parmenter received a formal, documented reprimand listing numerous employment-related issues.[13] (Aplt. App. at 27). He was also ordered to work at least one regular shift per week as a firefighter, for the purpose of improving morale in the workplace. (*Id.*). He was specifically placed on notice that any further infractions could result in disciplinary action – including termination. (*Id.*). He was advised that this was his "final warning." (*Id.*). He testified that he was aware that he could be terminated if there were further problems

---

[13] As noted above, he had also previously received a verbal reprimand by the prior City Manager. (Aplt. App. at 30; at 88, pp. 52-53; at 88, p. 61).

with his employment. (Aplt. App. at 34:21-24). This initial process was adequate to give Parmenter notice of the charges, an explanation of the City's findings and expectations, and an opportunity to respond. *See Loudermill*, *supra*.

Thereafter, for over a year, Parmenter and the City continued to address the items identified on the written reprimand. He had several one-on-one meetings with City personnel, including the City Manager and the City Attorney. He unilaterally emailed his job description to the City Attorney, to let the City Attorney know what the City Manager was requiring of him. (Aplt. App. at 42:1-3). He then had a lengthy face-to-face meeting with the City Manager and City Attorney. (E.g., Aplt. App. at 17, ¶9; at 43).

And yet, in 2019, the employment-related problems continued. He admittedly failed to work a single fire shift. (Aplt. App. at 30-32). And, as noted by the District Court, "after meeting with fire department employees, Carrick learned of other issues – including that department morale was abysmal due to favoritism of one employee over the others and that employees were trading shifts without documenting the trades and then directly compensating each other for covered shifts." (Aplt. App. at 140). These undisputed facts showed that Parmenter had sufficient notice of the specific charges against him and a right to be heard and respond to the charges.

Parmenter acknowledged he had a few conversations with the City Manager about the items in the written reprimand. (Aplt. App. at 96-97; at 109:11-22; at 111:9-22; at 117:14-19). Likewise, the City Manager stated that she had several meetings with Parmenter from the date of the reprimand to the date of termination. (Aplt. App. at 97; at 119:11-14; at 122-123; at 125:16-22). Clearly, Parmenter was able to address his own concerns and provide his side of the story to the City Manager prior to termination. Parmenter's primary appellate argument – i.e., that he was not really aware of the nature of the charges against him – simply defies credulity. The undisputed facts establish that good and sufficient cause existed for his termination and, hence, that his due process claim was without merit.[14] *See Cowley v. West Valley City*, 782 Fed. Appx. 712, 717 n.7 (10th Cir. 2019) (rejecting due process claim where detective received two pretermination

---

[14] The Personnel Manual noted that disciplinary action could be taken by the City for a variety of issues, including insubordination; incompetence; neglect of duty; any activity which is incompatible with City employment; for the good of the City or with or without cause; and at the discretion of the City. (Aplt. App. at 67, §9-1(5)). An employee's failure to abide by an employer's rules provides good cause for termination. *E.g., Mistletoe Exp. Svc. v. Motor Expressmen's Union*, 566 F.2d 692 (10th Cir. 1977) (finding employee's failure to abide by employer requirements provided just cause for termination); *Litvak Packing Co. v. Amalgamated Butcher Workmen*, 455 F. Supp. 1180 (D. Colo. 1978) (holding arbitrator erred, after finding employee had been insubordinate, in holding offense did not justify discharge); *Wheeler v. Wal-Mart Stores, Inc.*, 978 F. Supp. 1455, 1458 (D. Wyo. 1997) (holding plaintiff's admitted failure to abide by employer's rules provided "good cause" for termination).

hearings before deputy police chief, and was given chance to describe his version of events) ("Our cases do not require a more elaborate process.").

Parmenter claims that post-termination proceedings were inadequate. Not so. The *pre*-termination proceedings were lengthy, specific, and involved several face-to-face meetings between Parmenter and City personnel. And, at the time of his termination, he had another face-to-face meeting with Carrick and one member of the City Council. (Aplt. App at 112). At that point, he had another opportunity to speak, but did not say anything substantive. (Aplt. App at 87, p. 32:9-14; at 112:15-19). This face-to-face meeting satisfied any requirement that Parmenter be provided with post-termination process. Notably, he never requested any additional hearings or meetings with the City Manager, the City Attorney, or the Board of Commissioners.[15] Because Parmenter had been provided a lengthy pre-termination process, the City was only required to provide him with "some opportunity" to present his side of the case. *See Benavidez v. City of Albuquerque*, 101 F.3d 620, 626. The face-to-face meeting satisfied this requirement; the City cannot be faulted where the employee fails to speak when given a chance. *See Powell*, 891 F.2d at 1459 (noting employee "at that time chose not to exercise his opportunity to attempt to persuade Oates not to terminate him.").

---

[15] The Personnel Manual did not identify any appeal procedure (since employment was on an "at-will" basis), but did note that "[e]ach case will need to be evaluated on an individual basis." (Aplt. App. at 65).

Further, as noted in *Powell*, the primary purpose of the due process protections identified in *Loudermill* was to "guard against the erroneous termination of public employees." *See Powell*, 891 F.2d at 1469. But here, the undisputed facts show there was no erroneous termination. Further process was unnecessary. That is, any opportunity for further explanation "would not have contributed to the prevention of an erroneous termination" because Parmenter (1) agreed that he failed to complete the required fire shift and (2) agreed that department morale was suffering prior to his termination. These are undisputed facts. Parmenter does not argue that these two problems were insufficient to justify his termination. For that reason, the District Court was correct in finding that Parmenter's due process rights were not violated, and that "good and sufficient cause" existed for his termination. (Aplt. App. at 140).

## VII.  CONCLUSION

The Court should affirm the District Court in all respects. The City of Nowata is a charter city and, as shown above, did not adopt any state statutes that regulate the employment relationship between the City and fire department personnel. Hence, as reflected in the Personnel Manual, Parmenter was an at-will employee and could be terminated without cause. He therefore lacked a property interest deserving of due process protections.

Further, even assuming Parmenter had a property interest, the City identified "good and sufficient" cause for his termination. It is undisputed that Parmenter failed to work a single fire shift. It is also undisputed that morale in the Fire Department was not good prior to his termination. These two undisputed facts show that he was terminated for "good and sufficient" cause. Finally, Parmenter received adequate process prior to his termination, including a detailed, written reprimand; several face-to-face meetings with City officials; and a written termination letter presented to him in a face-to-face meeting with the City Manager and one City Council member. No further process was due. For those reasons, the District Court's order granting summary judgment to the City should be affirmed.

**WHEREFORE**, premises considered, Appellee City of Nowata requests the Court affirm the District Court in all respects.

<div style="margin-left:40%">

Respectfully submitted,

s/ Matthew B. Free
Thomas A. Le Blanc, OBA No. 14768
Matthew B. Free, OBA No. 18055
BEST & SHARP
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, Oklahoma 74103
Phone: (918) 582 1234
Fax: (918) 585 9447
tleblanc@bestsharp.com
mfree@bestsharp.com
*Attorneys for Appellee City of Nowata*

</div>

34

## STATEMENT REGARDING ORAL ARGUMENT

Per Fed. R. App. P. 34(a) and 10th Cir. R. 34.1, Appellee City of Nowata requests this case not be submitted for oral argument as it does not believe oral argument would assist the Court in its resolution of this appeal.

## CERTIFICATE OF SERVICE

I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit using the appellate CM/ECF system on January 5, 2021.  Listed counsel in this appeal are registered CM/ECF users who will be served by the appellate CM/ECF system.  See Fed. R. App. P. 25(b).

Date: January 5, 2022.                     s/ Matthew B. Free
                                           Matthew B. Free
                                           *Attorney for Appellee City of Nowata*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,833 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f);

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 2016 in fourteen-point Times New Roman font.

3.      I certify that the information on this form is true and correct and to the best of my knowledge and belief formed after a reasonable inquiry.

Date: January 5, 2022.                  s/ Matthew B. Free
                                        Matthew B. Free
                                        *Attorney for Appellee City of Nowata*

## CERTIFICATE OF DIGITAL SUBMISSION
## <u>AND PRIVACY REDACTIONS</u>

A copy of the foregoing Answer Brief, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with Managed Antivirus BitDefender Version 7.2.2.92 Engines Version 7.90790 (11224287) and, according to that program, the document is free of viruses.

In addition, all required privacy redactions have been made.

Date: January 5, 2022.                    <u>s/ Matthew B. Free                </u>
                                           Matthew B. Free
                                           *Attorney for Appellee City of Nowata*